### *C. & H. Turnpike Co. v. Hester.

ADMISSION OF INCOMPETENT EVIDENCE.

It is not error for a court to allow a witness to answer a question which calls for the personal knowledge of such witness on the subject, without first requiring a preliminary examination of the witness to be made as to her knowledge and ability to answer such question, the defendant not having excepted to the introduction of such evidence.

---

*This case was taken to the Supreme Court on error, and on May 16, 1893, the judgment of the circuit court was affirmed without report.

Turnpike Co. v. Hester.

EXCEPTION TOO GENERAL.

> It is the rule in this state that a general exception to the reversal of the court to give to the jury the whole of a series of propositions will not avail where one of the propositions is unsound.

ERROR to the Court of Common Pleas of Hamilton county.

SMITH, J.

It is claimed that the court of common pleas erred in its rulings as to the admission of evidence: in the charge given to the jury; in refusing to charge as requested by plaintiff in error, and in overruling a motion made for a non-suit and for a new trial. We notice, briefly, in this order, such matters as were insisted upon and called to our attention at the argument of the case.

First. It is said that the court erred in allowing the counsel for the plaintiff below to ask his client, while she was being examined as a witness, the amount that her husband was making a year, at the time of his death, and in answer to which she said, "about $1,500.00."

The question called for the personal knowledge of the witness on the subject. She might have been able to answer fully and completely. If it had been objected by the attorney of the defendant at the time, that it did not appear how the witness could know this, the court would doubtless have permitted him to make a preliminary examination of the witness, as to her knowledge and ability to answer the question, and if her answer was founded on hearsay, or was mere guessing, she would have not been qualified to speak. This course was not adopted by the defendant's counsel, but he proceeded to cross-examine the witness on the point, and made no further exception to her evidence. We see no error in the action of the court in this behalf.

Second. It is further claimed that the court in the charge to the jury, in effect withdrew from its consideration a large amount of evidence, offered by both parties, and which was entirely competent.

Testimony had, in fact, been so received as to the experience of persons traveling this turnpike road, with teams and vehicles, while passing the place where the deceased met his death, while it was in substantially the same condition as at the time of the accident, and showing how the attention of such parties had been called to the obstruction in question; and this was admitted without objection. The plaintiff, in addition to this, however, sought to show by the testimony of Mr. Reemelin and a Mr. Johnson, what happened to them severally when each was driving along the turnpike at this point. To this the attorney for the defendant objected, and the court having allowed the evidence to be given, exception was duly taken. Just after the noon recess of that day, however, the judge instructed the jury that he had been wrong in his prior ruling; that the evidence so objected to was incompetent, and must be disregarded by them, and further stated that if counsel would call his attention to it, he would in his charge to the jury specially instruct them to disregard it.

This he did. But it is urged that the language then used was so broad and indefinite in its character that the jury might well have supposed that thereby the court excluded all the evidence as to the experience of other parties at that point, though received without objection. But we are of the opinion that the fair interpretation of the language is that it referred only to the evidence which had once been received and

then ruled out in accordance with the announcement previously made by the court.

Third. The charge of the court on the question of the intoxication of the deceased, shortly before and at the time of his death, and his thereby contributing to the injury which caused his death, is complained of.

If it be conceded that the general charge of the court does not with sufficient clearness state the law on this point, it is difficult to see how the plaintiff in error can take advantage of it. We see no statement in this part of the charge which we deem erroneous. The defendant had the right to ask of the court further additional instructions on this subject, and did so, asking an instruction clear and definite in its character, which with certain slight modifications, proper enough, was given by the court to the jury, and we see no error in this particular.

Fourth. It is also claimed that the court erroneously charged the jury that the deceased might have relied on the instinct of his horses on the night he was killed. We do not so understand the charge. The court, while instructing the jury on the subject of contributory negligence on the part of the deceased, and that his administratrix could not recover in this action if he did so contribute to his own injury, told them that in determining whether he did so or not, they should consider all of the circumstances in the case disclosed in the evidence, tending to throw light on this question—among others, the familiarity of Hester with the road at this point—the darkness and the time of the night—the state of the weather and of the road itself, and how far the latter was then discernable—his condition as to sobriety or drunkenness—and whether as an ordinarily careful man and with his knowledge of them he had the right to rely on his animals, proof having been offered as to their character and habits in some particulars. This mode of presenting the matter to the jury we do not consider objectionable. All of these matters were entirely proper to be considered by the jury in the decision of the question whether Hester was, at the time of the accident, in the use of ordinary care.

There is more difficulty in upholding the succeeding paragraph of the charge. By it the jury was instructed to take into consideration "whether, as an ordinary careful man, knowing the habits of his horses, and knowing that the road was all one color, so that special objects could not be discerned, and knowing, or having good reason to know, that his horses could not distinguish objects (if you find these facts from the evidence), whether it did behoove him in the exercise of due care and skill, to be watchful and on the lookout, or whether he was as a prudent man justified in relying upon his horses."

We are of the opinion that if there was evidence showing such a state of fact as was assumed by the court in this paragraph to be, true, that the court might well have said to the jury, as a matter of law that it was the duty of the deceased under such circumstances to be wakeful and on the lookout, and not to go to sleep and rely on his horses, when he knew, or had good reason to know, that they could not distinguish objects. And it may be said that it was error to submit such question to the jury. There seems, however, to have been no such exception taken to this part of the charge as would sufficiently advised the court of the objection of the defendant below thereto—the only exception which could possibly refer thereto, being to "the part of the charge on ordinary care," which we think too indefinite.

Another answer to this is, that we think the assumption of the court, qualified as it is by the parenthetical remark, "if you find these facts from the evidence," were all in favor of the defendant, and not of the plaintiff. It seems to assume that the defendant knew "the habits of his animals"— "that the road was all one color, so that special objects could not be discerned"—"that he knew or had good reason to know that his horses could not distinguish objects," and that he did in fact rely on them. There was evidence tending to prove that Hester had driven these horses frequently over this road for months previously, and that owing to the snow-fall the road on that night appeared of one color; but there was not a scintilla of evidence to show that the team on that night could not distinguish objects, or that Hester relied upon them and was not wakeful and on the lookout. It is true that there was evidence tending to show that he was intoxicated when last seen alive, probably between nine and ten P. M., several hours before he was found dead, several miles from where he was last seen; but as to his condition after that time there was no evidence. The part of the charge alluded to would seem therefore to be predicted on no evidence, and related to an abstract question, and it is doubtful, even if it was erroneous, whether error would lie at the instance of the defendant.

*Fifth.* It is also objected that the court in his charge to the jury, spoke of this obstruction in the road as a "pile of rocks," or stone pile, when the character of the obstruction was a fact in controversy in the case. As we understand the evidence, there was no substantial dispute as to the obstruction being a pile of broken stone, lying on the roadway —nor is there much controversy as to the size of it—the dispute being as to what it was there for, whether to fill up a hole or depression in the roadway, or whether it was stone originally hauled there and broken up, and left on the road for use at other points. We can not see that there was anything improper in the use of these terms by the court.

*Sixth.* Did the court err in refusing to give any of the special instructions asked by defendant's counsel? Many of them were in fact given with slight modifications which did not, we think, materially alter their nature, or prejudice the defendant. Some of them were entirely refused, as shown on pages 18 and 19 of the charge.

The following charge or charges were so refused: "The facts of the finding of the body of the deceased dead on the turnpike at the place it was found, and the finding of the wagon upset in the condition it was found, are not to be taken by the jury as conclusive proof, in the absence of other testimony, that the injury resulted from the alleged stone pile, or that death was caused by the upsetting of the wagon."

We think this charge, as requested, was clearly right, and ought to have been given to the jury, and if not elsewhere substantially stated in the charge (and we think it was not), and if it had stood alone; and if special exception had been taken to the refusal of the court to give it, we would feel compelled to reverse the judgment for such error. But this was either a part only of one charge, or was one of a series of charges asked to be given as a whole, and the exception was to the refusal of the series, if in fact there were more than one charge asked, which is very questionable. In the succeeding part of this charge or series, is one asked to be given, "that the burden of proof was on the plaintiff, to prove by a fair preponderence of the evidence, affirmatively that the deceased did not contribute to his death in the manner in which he loaded, managed or

drove his team,'' and that he exercised the care that an ordinarily prudent man would have exercised.

To place this burden on the plaintiff wuld manifestly have been erroneous. The Ohio decisions are clearly against it—35 Ohio St., 627 and 40 Ohio St., 376. It is also clearly the rule in this state, that a general exception to the refusal of the court to give to the jury the whole of a series of propositions, will not avail where one of the propositions is unsound. 30 Ohio St., 104—32 Ib., 88.

*Seventh.* The last question is, did the court err in refusing to sustain the motion for a non-suit, or in overruling the motion for a new trial. On this last point, as on some of the others, we have had difficulty in coming to a conclusion entirely satisfactory to our own minds.

But as to one of the questions involved in the case, we may say that we have no trouble whatever; and that is, that negligence on the part of the defendant company is very clearly shown. It allowed this obstruction to remain for months on a narrow road, in the vicinity of a populous city, and where persons were passing at all hours of the day and night. It was a pile of stone twelve to fifteen inches high above the general surface of the roadway. The macadamized portion of the road was but sixteen feet wide—this pile of broken stone was seven and a half feet wide and over fifty feet in length. The road there ran east and west, and the north line or edge of this pile at the point where Hester was killed, extended three feet north, and four and a half feet south of the center of the traveled and macadamized portion of the roadway, and its sides being almost perpendicular, it certainly presented a dangerous obstacle to travel on the highway.

Did it cause the upsetting of the wagon, and thus bring about the death of Hester? No one but he was present at the time. His spring wagon was found overturned, at the north side of this pile of stones—the tracks in the snow showed that the wheels on the south or left hand side, as he was driving west, had run upon the pile, while those on the other side had run on the track north of it; the body of the deceased was found under the feet of the horses, with his head away from, and his feet near the front part of the wagon as if he had been thrown forward from it when it was upset. Though the evidence is not as satisfactory as could be desired to hold a defendant liable for damages for having thus produced the death of a person by negligence, yet we cannot say that a reviewing court should hold that a finding of a jury that it did, after a fair trial, is so much against the evidence as to warrant its reversal on that ground. On the contrary, the presumption is very strong that the stone pile was the cause of the upsetting of the wagon, and that Hester came to his death by reason thereof.

Is it shown that Hester contributed to the injury? We cannot say that such is the fact. The evidence tends strongly to show that he was intoxicated during the evening before he was killed, his dead body having been found about two o'clock a. m., and yet there is evidence which tends to show that he was not. What time it was when the accident occurred is not shown—the point at which it occurred is several miles from that at which the evidence shows he was last seen alive. If it be true that he was then under the influence of liquor, he may have recovered from it before he was hurt. The fact that he had just reached the foot of the long hill, and that the brake of his wagon, which was operated by a handle from the inside, was found set and pressing against the wheels, gives color and support to the idea, that he was at the time in the posses-

sion or his faculties and on the lookout. But on this point it is sufficient to say, that in the absence of proof to the contrary, the presumption of the law is, that Hester was then exercising ordinary and reasonable care, and on the state of evidence, we would not feel at liberty to interfere with the judgment in the case on the ground that the finding of the jury as to this was against the weight of the evidence.

I have said enough to show that in our judgment, we would be justified by the strict rules of law in affirming this judgment. But we are also of the opinion that we might reverse it without doing violence to well settled legal principles. For instance, having all of the evidence and the whole charge of the court before us, we would be at liberty in furtherance of justice, if we thought that substantial error had been done, by any action of the court, in the charges given or refused, operating to the prejudice of the defendant, to reverse the judgment, though no exception had been taken to such ruling at the time. Without definitely announcing our conclusion therefore, we suggest to counsel that a settlement of the case be made on this basis that the plaintiff remit $1,000.00 of this judgment as of the day of its rendition, and that by consent of parties the judgment be affirmed for the residue. This to be a final settlement of the controversy. If either of the parties refuses to consent to this we are prepared to announce what the judgment of the court will be in the case.

(The defendant in error declined to accede to the suggestion of the court and the judgment was affirmed.)

*Thomas McDougall*, Attorney for Plaintiff in Error.

*Healy & Brannan* and *Jordan & Jordan*, Attorneys for Defendant in Error.